IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-525-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Daniel W. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the

national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

On June 5, 2018, Plaintiff, then a 25-year-old male, applied for supplemental security income benefits under Title XVI of the Social Security Act. R. 60, 189-95. Plaintiff alleges that he has been unable to work since March 31, 2013, due to fibromyalgia, posttraumatic stress disorder ("PTSD"), anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, social anxiety, multiple personality disorder, and asthma. R. 189, 226. Plaintiff's claim for benefits was denied initially. R. 91-103. ALJ Gerardo R. Pico conducted an administrative hearing and issued a decision on December 24, 2019, denying benefits and finding

Plaintiff not disabled. R. 60-70, 75-90. The Appeals Council denied review, and the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. R. 7-9; 20 C.F.R. § 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date of June 5, 2018. R. 62. At step two, the ALJ found Plaintiff's fibromyalgia was a severe impairment, and his asthma, major depressive disorder, ADHD, bipolar disorder, and alcohol abuse were non-severe impairments. R. 62-63. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the four broad areas of mental functioning. R. 63-64. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 65.

At step four, the ALJ summarized Plaintiff's testimony, some of the medical source opinion evidence, and the medical evidence in the record. R. 65-68. He found Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), with frequent climbing ramps and stairs, stooping, crouching, and crawling; occasional climbing ladders, ropes, and scaffolds; and avoiding concentrated exposure to vibrations, pulmonary irritants, and workplace hazards. R. 65. The ALJ then determined that Plaintiff had no past relevant work. R. 69.

Based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, including photocopy machine operator, marking clerk, and router. R. 69. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of

4

Occupational Titles ("DOT"). *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled. R. 69-70.

**III.  Issue**

In challenging the Commissioner's denial of benefits, Plaintiff asserts the ALJ failed to properly evaluate the medical source opinion of consultative psychological examiner Dr. Thomas J. Spencer. ECF No. 17. The Court agrees with this allegation of error, and therefore reverses and remands for further proceedings.

**IV.  Analysis**

**A.  Psychological Evidence in Record**

The relevant medical records related to Plaintiff's mental impairments reveal that Plaintiff was treated with medication for depression and bipolar disorder from December 2018 through August 2019. R. 345-436. Plaintiff's mental status examinations at these appointments were normal, although he was anxious at a follow-up appointment in August 2019. R. 349, 369, 380, 414, 429.

The record contains two consultative psychological evaluations. R. 340-42, 442-45. In September 2018, at an examination in connection with Plaintiff's application for disability benefits, Dr. Spencer observed that Plaintiff "moaned and groaned excessively" as he walked into the office from the reception area but did not so when he entered the building from the parking lot. R. 340. Dr. Spencer indicated that Plaintiff presented as if in extreme distress, which "seemed exaggerated," and that Plaintiff presented with a restricted affect, which "seemed forced." R. 342. Dr. Spencer stated that Plaintiff appeared to be of average intelligence, demonstrated a decent working of social norms, completed simple arithmetic, and did not present as paranoid or grandiose. *Id.* He further stated that Plaintiff was "fidgety," his insight and judgment appeared

poor, and his long-term memory was unimpaired. *Id.* Dr. Spencer opined that Plaintiff was mildly to moderately impaired in his ability to learn, recall, and use information; to consistently stay on task; and to relate to and work with others on a consistent basis. *Id.*

In October 2018, Dr. Bryce T. Gray performed a consultative psychological evaluation in connection with Plaintiff's application for Medicaid benefits in the State of Missouri. R. 442-45. Dr. Gray observed that Plaintiff was fully oriented and displayed adequate effort and persistence during the evaluation. R. 444. Dr. Gray indicated Plaintiff had a "slightly impaired delayed memory," good moral judgment and logical reasoning, and no difficulty with simple math. *Id.* He estimated Plaintiff's intellectual functioning was in the low average range. *Id.* Dr. Gray diagnosed Plaintiff with persistent depressive disorder with anxious distress. R. 445.

State agency psychologist Dr. Marsha Toll reviewed the record in October 2018 and concluded that Plaintiff's depressive, bipolar and related disorders were non-severe and produced no more than mild functional limitations. R. 95-97.

B. **ALJ's Discussion of Psychological Evidence**

The ALJ discussed Dr. Toll's opinion that Plaintiff's mental impairments were non-severe as part of his severity analysis at step two. The ALJ found Dr. Toll's opinion persuasive because: (1) Dr. Toll is familiar with the disability determination process; (2) she is a psychologist with specialized training that make her qualified to render an opinion; (3) her opinion was consistent with and supported by the longitudinal medical history and Plaintiff's self-reported daily activities; and (4) her opinion was accompanied by a detailed narrative. R. 64.

The ALJ also discussed Dr. Gray's opinion. The ALJ found his opinion unpersuasive because: (1) Dr. Gray issued his opinion in connection with Plaintiff's eligibility for benefits through the State of Missouri; (2) he based his findings on a less complete record; (3) he used a

different standard than the one applied for determining disability; and (4) he did not express his opinion in functionally relevant terms. *Id*.

As to Dr. Spencer's consultative examination, the ALJ discussed and relied on Dr. Spencer's observations of Plaintiff's physical presentation as support for his determination that Plaintiff's fibromyalgia was not as limiting as Plaintiff alleged. R. 67. However, the ALJ did not mention or discuss Dr. Spencer's findings related to Plaintiff's mental impairments. The ALJ did not evaluate the persuasiveness of Dr. Spencer's opinion or include any mental limitations in the RFC.

### C.     Legal Standards Governing Evaluation of Medical Opinions

For claims filed after March 27, 2017, such as Plaintiff's claim, 20 C.F.R. § 416.920c provides that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a).[2] Instead, the ALJ need only articulate how persuasive he finds each medical source's opinion. 20 C.F.R. § 416.920c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how he considered those two factors. 20 C.F.R. § 416.920c(b)(2).[3] The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion,

---

[2] In adopting the revised rules, the Social Security Administration explained: "To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5854, 2017 WL 168819 (Jan. 18, 2017).

[3] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

7

such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b)(2)-(c).

### D.      ALJ Failed to Properly Evaluate Dr. Spencer's Opinion

#### 1.      Dr. Spencer Offered a Medical Opinion

The Court concludes Dr. Spencer provided a medical opinion. The regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions . . ." in his ability to perform the physical or mental demands of work. 20 C.F.R. § 416.913(a)(2). The mental demands of work include activities such as "understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 416.913(a)(2)(i)(B).

Dr. Spencer's report explicitly includes his opinion regarding Plaintiff's impairment-related limitations in his ability to perform the mental demands of work. As set forth above, Dr. Spencer opined that Plaintiff was mildly to moderately impaired in his ability to learn, recall, and use information; to consistently stay on task; and to relate to and work with others on a consistent basis. These findings closely corelate to the mental demands of work activities listed in the regulations and thus meet the regulatory definition of a medical opinion. *Id.* As Plaintiff correctly points out, this case is distinguishable from *Sean T.W. v. Saul,* No. 19-CV-645-JFJ, 2021 WL 1143775 (N.D. Okla. Mar. 25, 2021), in this key aspect. In *Sean T.W.,* the claimant's treating physician signed a letter excusing him from work for a period of time "due to medical illness." *Id.* at *4. Additionally, treatment notes from a physician assistant at the same clinic indicated that claimant's "disability was put" to a particular date and later extended for an additional three months. *Id.* This Court found these opinions were not medical opinions because they provided

8

no work-related functional limitations and were, at best, opinions on an issue reserved to the Commissioner. The Court therefore held that the ALJ's failure to weigh such opinions was not error. *Id.* at *4-5. In this case, Dr. Spencer offered a medical opinion.

### 2. ALJ Committed Harmful Error

The Court concludes the ALJ failed to properly evaluate Dr. Spencer's opinion. Although the ALJ relied on Dr. Spencer's observations of Plaintiff's physical presentation as part of his consistency analysis, he ignored Dr. Spencer's findings related to Plaintiff's mental impairments and failed to discuss the persuasiveness of Dr. Spencer's opinion. As set forth above, the regulations require the ALJ to evaluate the persuasiveness of the medical source opinions in the record based primarily on supportability and consistency, and to provide an articulation of that analysis in his opinion. 20 C.F.R. § 416.920c(b). Here, the ALJ's decision does not reflect any articulation regarding the persuasiveness, supportability, and consistency of Dr. Spencer's opinion as to Plaintiff's mental impairments. The plain language of the regulations is clear that the ALJ, *at a minimum*, must specifically explain how he applied the supportability and consistency factors in determining the persuasiveness of a medical source opinion. 20 C.F.R. § 416.920c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's opinions . . . in your determination or decision." (emphasis added)). Thus, despite appropriately considering inconsistencies between Plaintiff's subjectively alleged physical limitations and Dr. Spencer's observations of Plaintiff's physical presentation, the ALJ's failure to explain his consideration of the persuasiveness, supportability, and consistency of Dr. Spencer's opinion regarding Plaintiff's mental impairments was error.

The Commissioner concedes the ALJ failed to articulate his analysis of Dr. Spencer's opinion but argues such error was harmless for the following RFC-related reasons: (1) the ALJ

9

did not deny benefits at step two; (2) the ALJ stated that he considered all of Plaintiff's impairments in assessing the RFC; (3) the ALJ discussed Plaintiff's subjective statements and testimony regarding his mental impairments; (4) the ALJ mentioned Dr. Spencer's observations as to Plaintiff's physical presentation; and (5) Dr. Toll, the agency reviewer whose opinion the ALJ found persuasive, considered Dr. Spencer's opinion. The Court finds these arguments unavailing. Although the ALJ summarized Plaintiff's testimony regarding his mental impairments and relied on Dr. Spencer's physical observations in determining Plaintiff's RFC, the ALJ did not provide *any* analysis of Plaintiff's non-severe mental impairments or assess the combined impact of Plaintiff's mental impairments with his severe fibromyalgia. R. 65-68. In assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's impairments, whether severe or not severe." *Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis omitted); *see also* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including [those] that are not 'severe' . . . when we assess your residual functional capacity."). Absent a discussion of how Plaintiff's non-severe mental impairments were accounted for in the RFC assessment, or an explanation why such impairments did not impose any functional limitations, the Court is unable to "credit [the ALJ's] conclusion with substantial evidence." *Wells,* 727 F.3d at 1071.

Further, the ALJ's decision indicates the RFC determination was based solely on limitations caused by Plaintiff's severe impairments. For example, the ALJ's analysis of the opinions of Dr. Toll and Dr. Gray occurred at step two, and he did not mention their opinions anywhere else in his decision. R. 64. Additionally, after thoroughly explaining how he accounted for Plaintiff's severe fibromyalgia in the RFC assessment, the ALJ concluded his step-four analysis by stating Plaintiff "does have severe impairments resulting in significant work-related limitations,

10

but only to the extent described in the residual functional capacity determination." R. 68. These actions, when combined with the ALJ's omission of Plaintiff's non-severe mental impairments from the RFC discussion, make it clear the ALJ impermissibly relied on his step two findings to conclude Plaintiff had no limitations based on his non-severe mental impairments. *See Wells,* 727 F.3d at 1071 ("[T]o the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis."). Thus, the ALJ's RFC determination is not saved by his statement that he considered all of Plaintiff's impairments, his summary of Plaintiff's subjective symptoms, his reliance on Dr. Spencer's observations of Plaintiff's physical presentation, or his reliance on Dr. Toll's opinion that Plaintiff's mental impairments were not severe.

The Commissioner asserts the ALJ's error was harmless for the following additional reasons, all of which relate to the probative value of Dr. Spencer's opinion: (1) Plaintiff's repeated exaggeration of his symptoms undermines Dr. Spencer's opinion; (2) Dr. Spencer's limitations do not rise to the level of being moderate, but rather fall in between mild and moderate; and (3) Dr. Spencer did not provide any supporting explanation for his limitations. However, none of these reasons were provided by the ALJ. Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, Dr. Spencer's opinion regarding Plaintiff's mental limitations reflects functional limitations beyond those considered in the RFC or posed to the VE, and it is unclear to the Court what medical evidence contradicts it. Given the absence of any mental

11

limitations in the RFC, a full consideration of Dr. Spencer's opinion could reasonably support a different result.  Accordingly, remand is required for proper evaluation of Dr. Spencer's opinion.

V.      Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order**.**

**SO ORDERED** this 21st day of March, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**